*108 First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail. Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor....
Prof'l Real Estate Investors, Inc., 508 U.S. at 60, 113 S.Ct. 1920 (internal quotations and emphasis omitted). "Only if the suit is found to be objectively baseless may the court proceed to the second prong of the test." Morton Grove Pharm. v. Par Pharm. Cos., Inc., 2006 WL 850873, at *10 (N.D. Ill. 2006).
Specific to the '864 patent, the plaintiffs make two principal claims in support of their sham litigation argument. First, the plaintiffs claim that Sanofi initiated litigation while knowing that Lilly's KwikPen did not infringe the '864 patent. Second, the plaintiffs contend that Sanofi sued on the '864 patent knowing that the patent should not have been listed in the Orange Book to begin with. As the court has already dismissed the Orange Book listing claim, the plaintiffs' second argument need not be addressed further.
The Facts as Alleged do not Establish that the Lawsuit was "Objectively Baseless"
"A firm that has received a patent from the patent office (and not by fraud ...), and thus enjoys the presumption of validity that attaches to an issued patent ... is entitled to defend the patent's validity in court, to sue alleged infringers, and to settle with them, whatever its private doubts, unless a neutral observer would reasonably think either that the patent was almost certain to be declared invalid, or the defendants were almost certain to be found not to have infringed it, if the suit went to judgment." United Food, 2017 WL 2837002, at *11 (quoting Asahi Glass Co. v. Pentech Pharm., Inc., 289 F.Supp.2d 986, 992-93 (N.D. Ill. 2003) ). Thus, to prevail on its sham litigation claim, the plaintiffs must establish that Sanofi "had no reasonable basis to believe that its patent claims were valid or that they were infringed by [Lilly.]" 800 Adept, Inc. v. Murex Sec., Ltd., 539 F.3d 1354, 1370 (Fed. Cir. 2008), and cases cited. Here, however, the facts as alleged do not show that Lilly was "almost certain to be found not to have infringed" the '864 patent. United Food, 2017 WL 2837002, at *11.
According to the Amended Complaint, prior to bringing suit Sanofi had "[t]he pages of Lilly's § 505(b)(2) application [that] (1) showed the list of ingredients of Lilly's NDA product, and (2) identified the type of injector pen by which the Lilly NDA product would be administered." Am. Compl. ¶ 204. Other than repeatedly stating that the documents showed that Lilly's products "would not infringe any of the claims in the two injector pen patents (the '864 and '044 patents ) or any claims in the two vial formulation patents (the '652 and '930 patents )[,]" the plaintiffs have offered no facts in support of these conclusions. Id. ¶¶ 204, 211-12, 231-33. Since this court must disregard conclusory allegations of fact and law, Schatz, 669 F.3d at 55, the allegations of the Amended Complaint are insufficient to show that the underlying lawsuit lacked any reasonable merit.
*109 Other facts also support the conclusion that the lawsuit was not objectively baseless.[12] While none of these facts, in and of themselves, establish that the litigation brought by Sanofi was not sham litigation, they all combine to defeat any contention that the litigation was objectively unreasonable when brought. See United Food, 2017 WL 2837002, at *10-13 (finding that plaintiffs fail to sufficiently plead sham litigation after considering multiple factors); AstraZeneca AB v. Mylan Labs., Inc., MDL Docket No. 1291, 2010 WL 2079722, at *4 (S.D.N.Y. May 19, 2010) (finding that suit was not a sham based on an analysis of the extent of the underlying litigation and because a Paragraph IV Certification gave "an objectively reasonable basis to sue.").
As an initial matter, in its litigation with Lilly, Sanofi was enforcing patents that had never been invalidated or found unenforceable against an obvious act of infringement. While this is not a prerequisite to a claim of sham litigation, it is not irrelevant: patents are presumed to be valid, and patent holders are entitled to enforce their rights under their patents, so parties claiming sham litigation must overcome these presumptions. See United Food, 2017 WL 2837002, at *10 ("The Court declines to adopt a bright-line rule requiring that a patent be invalidated or tarnished before a plaintiff can allege a sham litigation claim, but notes that it is difficult to conceive of a scenario in which a sham litigation claim would go forward without the patent having been invalidated or otherwise tarnished."). Moreover, with respect to the '864 patent, as detailed above, there was industry support for the proposition that such patents should be listed in the Orange Book. Thus, the fact that Sanofi sought to protect the '864 patent in the face of a Paragraph IV Certification is not obviously unreasonable.
Moreover, the record in the underlying litigation establishes that Sanofi's contention that the KwikPen infringed on the '864 patent was not objectively baseless. As detailed above, the plaintiffs' assertion that there was no infringement is not supported by any facts in the Amended Complaint. In contrast, the parties in Sanofi I engaged in a claim construction dispute addressing various elements of the '864 patent. If Lilly's KwikPen was completely different, and bore no relationship to the Lantus SoloSTAR (as plaintiffs allege) there would have been no reason for Lilly to have participated in a claims construction exercise. Instead, both Lilly and Sanofi proposed different interpretations of various elements of the '864 patent, and the court adopted and rejected some of each of the parties' suggestions. See Sanofi I, Docket No. 192. The record does not support the conclusion that Sanofi should have known that there was no way that Lilly's KwikPen could be found to have infringed on Sanofi's product.
The fact that the underlying litigation was heavily contested, while not conclusive, also weighs against a finding that the litigation was a sham. The '864 patent was litigated for over a year and a half before the parties came to a settlement agreement on the eve of trial. The docket indicates an active and hard-fought dispute. The sham litigation exception to the Noerr - Pennington immunity was not intended to provide all third parties with an opportunity to re-litigate cases. Rather, the doctrine is reserved for those cases where plaintiffs can assert facts showing that the patent suit was objectively meritless.
*110 See AstraZeneca AB, 2010 WL 2079722, at *4 (finding that the underlying lawsuit was "hard-fought and close" and that such an "outcome hardly bespeaks baseless litigation."); see also Asahi Glass Co., Ltd., 289 F.Supp.2d at 995 ("... to avoid turning every patent case into an antitrust case, some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase ... an infringement suit must be adjudged to be objectively baseless before it can be considered an unlawful method of competition ..."). The fact that Sanofi I was litigated so extensively before settlement is evidence that the claims involved were not baseless.
The settlement in Sanofi I, while not dispositive, further shows that the underlying suit did not lack any merit. See Toyo Tire & Rubber Co., Ltd. v. Atturo Tire Corp., No. 14 C 0206, 2017 WL 1178224, at *4 (N.D. Ill. Mar. 30, 2017) ("... courts have invariably held that lawsuits terminating in favorable settlement are also objectively reasonable and are not shams"). Obviously "[p]arties may settle a litigation for a variety of reasons independent of the merits of the claims." Morton Grove, 2006 WL 850873, at *11 (internal citations omitted). Nevertheless, a "favorable prior settlement may afford support for a belief that subsequent litigation will be successful[.]" Id. Here, plaintiffs argue that the settlement was not, in fact, a "favorable" one since it allowed Lilly to enter the market many years before all of the relevant patents expired. However, Sanofi points to the fact that it is going to be paid royalties from Lilly in connection with the sale of Lilly's products, and that the settlement delayed Lilly's entry into the market until December 2016. Given the existence of the royalty payments, and the delayed entry into the market, it cannot be said that the settlement was so insignificant that the underlying litigation was obviously a sham. Rather, the fact of the settlement helps defeat a finding that the litigation was objectively baseless.[13]
In light of the plaintiffs' failure to establish that the litigation was objectively baseless, this court need not address the second prong of the sham litigation test. Accordingly, plaintiffs' antitrust claims based on a contention of sham litigation are dismissed.
C. Plaintiffs' Other Claims Fail for Lack of Causation
In light of the court's conclusion that the litigation concerning the '864 patent was not a sham litigation, the remainder of the claims of the Amended Complaint relating to the other Sanofi patents must be dismissed. Since Sanofi was entitled to bring its patent litigation against Lilly due to the '864 patent, Sanofi was entitled to the 30 month delay in Lilly's entry into the market.
"An antitrust plaintiff must prove a causal connection between the antitrust violation and actual damages suffered." In re Wellbutrin XL Antitrust Litig., 2012 WL 1657734, at *33 (E.D.P.A. May 11, 2012). In an antitrust class action, "individual injury (also known as antitrust impact) is an element of the cause of action; to prevail on the merits, every class member must prove at least some antitrust *111 impact resulting from the alleged violation." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3rd Cir. 2008). Plaintiffs have alleged harm due to "artificially-inflated" prices for insulin glargine products between February of 2015, when the '722 Patent expired, and December 2016, when Lilly was permitted to sell Basaglar pursuant to the Sanofi I settlement.
As explained above, plaintiffs have not pled facts showing that the listing of the '864 patent in the Orange Book was unreasonable, or that the litigation enforcing the '864 patent was a sham. Thus, the '864 patent stood as a lawful bar to Lilly's market entry for as long as it remained in effect, unless otherwise agreed. The '864 patent was set to expire in 2024. Regardless of the anticompetitive harm caused by the formulation and other pen patents on which plaintiffs have sued in the instant case, the '864 patent stood as a lawful bar to entry during the period of alleged harm. This court therefore dismisses those claims as there is no plausible argument for causation.
V. CONCLUSION
For the reasons detailed herein, the Motion to Dismiss (Docket No. 21) is ALLOWED and the Plaintiffs' Amended Class Action Complaint is dismissed without prejudice.
SO ORDERED.

The court may take judicial notice of the docket of any court case. Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001). Here the underlying case is found at Sanofi-Aventis U.S. LLC v. Eli Lilly & Co., No. 1:14-cv-00113-RGA-MPT (D. Del.) ("Sanofi I").

In the Amended Complaint, the plaintiffs assert that in the Consent Judgment settling Sanofi I, "Sanofi finally admitted that Lilly's Basaglar did not infringe the vial formulation patents or DCA injector pen patents." Am. Compl. ¶ 242. This allegation is not supported by the record. Rather, the Consent Judgment provides that "by virtue of the license granted by Sanofi to Eli Lilly as part of the Settlement Agreement" Lilly's product does not infringe on the formulation or pen patents. See Sanofi I, Docket No. 279 at 24.